# 25-1699; 25-1702

# United States Court of Appeals
## for the
# Fourth Circuit

BRIAN O'CONNOR, Administrator Estate of Hyo Jung Kim,
SUNG-CHUL JUNG,

*Plaintiffs/Appellants*,

— v. —

FAIRFAX TAXI, INC.; EVELYN KENIN,
Administrator Estate of Amoah Gyimah; RED TOP CAB, LLC,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# BRIEF OF APPELLANTS

Steven M. Garver
Deborah Mayer
GARVERLAW, PLLC
11702 Bowman Green Drive
Reston, Virginia 20190
(703) 471-1090

*Counsel for Appellants*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 813683)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1699__     Caption: __O'Connor, Admin Estate of Hyo Jung Kim v. Fairfax Taxi, Inc. et. al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Brian M. O'Connor, Administrator Estate of Hyo Jung Kim, deceased__
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

12/01/2019 SCC                                   - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Deborah E. Mayer      Date: 7/3/25

Counsel for: Brian M. O'Connor, Administrator

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1702__          Caption: __Jung v. Fairfax Taxi, Inc. et. al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Sung-Chul Jung__
(name of party/amicus)


 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.    Does party/amicus have any parent corporations?            ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☐YES ☑NO
      If yes, identify all such owners:


12/01/2019 SCC                          - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Deborah E. Mayer                    Date: 7/3/25

Counsel for: Sung-Chul Jung

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

STATEMENT OF JURISDICTION.............................................................................1

ISSUES PRESENTED..................................................................................................1

STATEMENT OF THE CASE.....................................................................................1

    1. Jung Consistently Recollected That Mr. Gyimah Was Using an Electronic Device Prior To The Collision, That Northbound Traffic Was Light and Not Blocked by Any Cars in The Right Lane........................................................................4

    2. Timothy Bracken Corroborated Jung's Testimony.............................5

    3. John McDonald, A Retired Police Captain, Testified That There Was No Evidence That Gyimah Attempted to Avoid the Collision ........................................................................................6

    4. Roger Daven Oswalt Testified That He Observed the Collision but Cannot Tell Who Crossed the Double Yellow Line........................................................................................................7

    5. The Diagram of The Collision from The US Park Police Investigation Shows No Skid Marks or Attempts by Gyimah to Avoid the Collision and The Photographs Show That the Vehicles Crashed Head On .........................................................7

    6. Plaintiff's Expert Affirmed That That Gyimah Could Have Made Efforts to Avoid the Collision, And He Did Not ........................8

SUMMARY OF THE ARGUMENT .........................................................................9

ARGUMENT ...............................................................................................................10

    I THE TRIAL COURT ERRED BY DISMISSING FAIRFAX TAXI, INC. BASED SOLELY ON THE PLEADINGS .....................10

        1. Standard Of Review .................................................................10

        2. The leniency of Virginia's Non-suit statute requires this Court to conclude res judicata should not apply to the question of Respondent Superior ......................................11

i

II     THE TRIAL COURT ERRED  BY GRANTING
       SUMMARY JUDGMENT TO THE DEFENDANTS
       DESPITE A GENUINE QUESTION OF FACT
       PRESENTED BY PLAINTIFFS THROUGH
       CIRCUMSTANTIAL EVIDENCE ..................................................19

       1.     Standard Of Review.................................................................19

       2.     There Is Sufficient Circumstantial Evidence to Prove
              That Gyimah Was Negligent .....................................................21

       3.     A Jury Can Find That Gyimah's Negligence Was a
              Concurrent Proximate Cause of The Plaintiff's Injuries .........25

       4.     Judicial Notice of Speed and Stopping Distance Does
              Not Create a Presumption and Should Not Be Applied
              Absent Evidence of Actual Speed of Vehicles .........................29

III    THE TRIAL COURT ERRED BY DENYING PLAINTIFFS'
       MOTION TO FILE THE ATTACHMENTS TO THE
       EXPERT DESIGNATION LATE AS THERE WAS NO
       HARM OR PREJUDICE TO THE DEFENDANTS.........................31

       1.     Standard Of Review.................................................................31

       2.     The Late Filing of The Expert Designation Would Not
              Cause Harm, Surprise, Disrupt the Trial Was Important
              and Was Inadvertent.................................................................31

       3.     Judge Hilton Should Not Have Disqualified Mr. Miller ..........34

CONCLUSION ....................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Adams v. Naphcare Inc.,
  No. cv 2:16-cv-229 (ED VA 2016) ........................................................25

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................19

Antisdel v. Ashby,
  279 Va. 42, 688 S.E.2d 163 (2010) ......................................................12

Armstrong v. Rose,
  170 Va. 190, 196 S.E. 613 (1938) ........................................................26

Atkinson v. Sachno,
  261 Va. 278, 541 S.E.2d 902 (2001) ....................................................15

Belcher v. Dandridge,
  61 Va Cir. 684 (Va. Cir. 2002) ............................................................14

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ......................21

Blanchard v. Richmond Traffic Control, Inc,,
  Va Ct app. No.: 1871-23-2 (Va Ct App 2024) ....................................27

Brant v. Schneider Nat'l, Inc.,
  43 F.4th 656 (7th Cir. 2022) ................................................................16

Brown v. Koulizakis,
  229 Va. 524, 331 S.E.2d 440 (1985) ....................................................26

Butler v. United States,
  702 F.3d 749 (4th Cir.2012) ................................................................10

Carolina, Clinchfield & Ohio Ry. Co. v. Hill,
  119 Va. 416 (1916) ..............................................................................27

Carter v. Fleming,
  879 F.3d 132 (4th Cir. 2018) ..............................................................19

Chavez-Deremer v. Med. Staffing of Am.,
  23-2176, 23-2284 (4th Cir. Jul 17, 2025)...................................... 15, 16

Commonwealth v. Hudson,
    265 Va. 505 578 S.E.2d 781 (2003) ...................................................................21

Curran v. Axon Enter., Inc.,
    712 F.Supp.3d 717 (E.D. Va. 2024) ...................................................................14

Dalloul v. Agbey,
    255 Va. 511, 499 S.E.2d 279 (1998) ...................................................................12

Dash v. Mayweather,
    731 F.3d 303 (4th Cir. 2013) ...................................................................20

Dorman v. State Indus., Inc.,
    292 Va. 111, 787 S.E.2d 132 (2016) ...................................................................25

Drager v. Pliva,
    741 F.3d 470 (2014) ...................................................................10

Edwards v. City of Goldsboro,
    178 F.3d 231 (4th Cir.1999) ...................................................................10

Erie R. Co. v. Tompkins,
    304 U.S. 64 (1939) ...................................................................21

Estate of Moses ex rel. Moses v. Southwestern Va. Transit Mgmt. Co.,
    273 Va. 672, 643 S.E.2d 156 (2007) ...................................................................26

Ford Motor Co. v. Boomer,
    285 Va. 141, 736 S.E.2d 72 (Va 2013) ...................................................................27

Gowen v. Winfield.,
    130 F.4th 162 (4th Cir. 2025) ...................................................................19

Hadeed v. Medic-24, Ltd.,
    237 Va. 277, 377 S.E.2d 589 (1989) ...................................................................15

Harman v. Honeywell Int'l, Inc.,
    758 S.E.2d 515 (Va. 2014) ...................................................................26

Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.,
    790 F.3d 532 (4th Cir. 2015) ...................................................................20

INOVA Health Care Servs. v. Kebaish,
    284 Va. 336, 732 S.E.2d 703 (2012) ...................................................................12

Jenkins v. Payne,
    251 Va. 122, 465 S.E.2d 795 (1996) ...................................................................26

Kellermann v. McDonough,
    684 S.E.2d 786 (Va. 2009) .................................................................... 25, 26

Kensington Associates v. West,
    234 Va. 430, 362 S.E.2d 900 (1987) ...................................................15

Kritter v. Mooring,
    No. 24-1158 (4th Cir. Jul 08, 2025) ........................................... 19, 22

Laws v. McIlroy,
    283 Va. 594, 724 S.E.2d 699 (2012) ...................................................12

Majorana v. Crown Cent. Petroleum Corp.,
    539 S.E.2d 426, 260 Va. 521 (2000) ............................................ 14, 16

Maroulis v. Elliott,
    151 S.E.2d 339 (Va. 1966) .................................................................... 25, 26

McDonald v. Hampton Training School for Nurses,
    254 Va. 79, 486 S.E.2d 299 (1997) ................................................ 15, 16

Murray v. Smithson,
    187 Va. 759, 48 S.E.2d 239 (1948) .................................................26-27

Nash v. Jewell,
    227 Va. 230, 315 S.E.2d 825 (1984) ...................................................11

Norfolk Southern Rwy. Co. v. Sumner,
    822 S.E.2d 809 (Va 2019) ...................................................................21

Parrish v. Premier Directional Drilling, L.P.,
    917 F.3d 369 (5th Cir. 2019) ...............................................................16

Peyton v. Reynolds Assocs.,
    955 F.2d 247 (4th Cir. 1992) ...............................................................22

Plummer v. Center Psychiatrists, Ltd.,
    252 Va. 233, 476 S.E.2d 172 (1996) ...................................................15

Rascher v. Friend,
    279 Va. 370 (Va. 2010) .........................................................................26

Reyes v. Waples Mobile Home Park Ltd. P'ship,
    91 F.4th 270 (4th Cir. 2024) ...............................................................19

RGR, LLC v. Settle,
    764 S.E.2d 8 (Va. 2014) .......................................................................25

Richmond Coca-Cola Bottling Works, Inc. v. Andrews,
173 Va. 240, 3 S.E.2d 419 (1939) ...................................................... 27, 28, 29

Salve Regina College  v. Russell,
499 U.S. 225 (1991) ...................................................................................21

Sanchez v. Medicorp Health Sys.,
270 Va. 299, 618 S.E.2d 331 (2005) ........................................................14

Schultz v. Capital Intern. Sec., Inc.,
466 F.3d 298 (4th Cir. 2006) .....................................................................16

Seamster v. Taylor,
Civil Action 4:21-cv-00021 (W.D. Va. Jun 15, 2022) .............................30

Smith v. Grenadier,
203 Va. 740, 127 S.E.2d 107 (1962) .........................................................15

Southern States Rack & Fixture v. Sherwin-Williams,
318 F.3d 592 (4th Cir. 2003) .....................................................................31

Stith v. Thorne,
488 F.Supp.2d 534 ......................................................................................15

Sullivan, D.O. v. Robertson Drug Co., Inc.,
639 S.E.2d 250 (2007) ...............................................................................26

Temple v. Mary Wash. Hosp., Inc.,
288 Va. 134, 762 S.E.2d 751 (2014) .................................................. 11, 12

Tennant v. Peoria & Pekin Union Ry.,
321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944) ......................................21

Tysons Toyota v. Globe Life Ins. Co.,
No. 93-1359, No.93-1443, No. 93-1444,
1994 U.S. App. LEXIS 36692 (4th Cir. Dec. 29, 1994) ...........................11

US v. 8.929 Acres of Land in Arlington County, Virginia,
36 F.4th 2 (4th Cir. 2022) .................................................................... 20, 25

Von Roy v. Whitescarver,
197 Va. 384, 89 S.E.2d 346 (1955) ..................................................... 26, 27, 28

Walters v. McMahen,
684 F.3d 435 (4th Cir. 2012) .....................................................................21

Wilkins v. Montgomery,
751 F.3d 214 (4th Cir. 2014) ..................................................................31

Winchester Homes Inc. v. Osmose Wood Preserving, Inc.,
37 F.3d 1053 (4th Cir. 1994) ............................................................. 11-12


**Statutes & Other Authorities:**

28 U.S.C § 1332 ....................................................................................1

28 U.SC. § 1291 .....................................................................................1

36 C.F.R. § 4.2 ....................................................................................21

Fed. R. Civ. P. 12(c) ...........................................................................10

Fed. R. Civ. P. 56(a) ...........................................................................19

Fed. R. Evid. 404(a)(1) .......................................................................24

FFX Cty Ord. § 84.1-1-1 ....................................................................18

FFX Cty Ord. § 84.1-1-2 ....................................................................18

FFX Cty Ord. § 84.1-2-5 ....................................................................18

FFX Cty Ord. § 84.1-2-6 ....................................................................18

FFX Cty Ord. § 84.1-2-7(c) ...............................................................18

FFX Cty Ord. § 84.1-2-9 ....................................................................18

FFX Cty Ord. § 84.1-2-10 ..................................................................18

FFX Cty Ord. § 84.1-2-11 ..................................................................18

FFX Cty Ord. § 84.1-2-12 ..................................................................18

FFX Cty Ord. § 84.1-3-1 ....................................................................18

FFX Cty Ord. § 84.1-3-2 ....................................................................18

FFX Cty Ord. § 84.1-9-1 ....................................................................18

Restatement 2nd Torts § 409 .............................................................14

Restatement 2nd Torts § 428 ......................................................... 2, 13

Restatement (Third) of Torts § 26 ......................................................27

Restatement (Third) of Torts § 27 ...................................................................27

Va. Code Ann. § 8.01-299(E)(3) ...................................................................2

Va. Code Ann. § 8.01-380 ................................................... 2, 11, 12

Va. Code Ann. § 8.01-380(A)...................................................................11

Va. Code Ann. § 8.01-443 ...................................................................27

Va. Code Ann. § 46.2-880 ................................................... 29, 30, 34

Va. Code Ann. § 46.2-2065 ...................................................................18

<u>**STATEMENT OF JURISDICTION**</u>

The U.S. District Court for the Eastern District of Virginia had jurisdiction over these matters pursuant to 28 U.S.C § 1332 as the Sung-Chul Jung and Plaintiff's decedent, Hyo-Jung Kim, were citizens and residents of the Republic of South Korea and all of the Defendants were residents of the Commonwealth of Virginia. This Court has jurisdiction pursuant to 28 U.SC. § 1291.

<u>**ISSUES PRESENTED**</u>

I. <u>**Did the trial court Commit Reversible Error by Dismissing Fairfax Taxi, Inc. Based Solely on the Pleadings.**</u>

II. <u>**Did the trial court commit reversible error by granting summary judgment to the Defendants despite a genuine question of fact presented by Plaintiffs through circumstantial evidence?**</u>

III. <u>**Did the trial court abuse its discretion by denying the Plaintiffs the opportunity to file the attachments to their expert designation, which had not been timely filed due to a clerical error where there was no prejudice to the Defendant?**</u>

<u>**STATEMENT OF THE CASE**</u>

These consolidated cases arose out of horrific automobile collision on the George Washington Parkway, which is a federal property managed by the National Park Service, in 2019. Dr. Jung and Ms. Kim (Korean citizens visiting the United States for a business conference) were passengers in the Red Top Cab driven by Amoah Gyimah. See JA54, JA57, JA63, JA65, JA72, JA76, JA127, JA167. Fairfax Taxi, Inc ("Fairfax Taxi") does business as Red Top Cab. JA55, JA63, JA71. Ms.

Kim died as a result of the collision, and Dr. Jung was severely injured. JA166-167.

The Plaintiffs initially filed cases in the Virginia, Fairfax Circuit Court. JA21-37. Following several years of litigation but before a trial began, upon Plaintiffs' motion and pursuant to Va. Code Ann. § 8.01-380, the Fairfax County Circuit Court entered an Order of Non-suit on July 5, 2023 JA99. In a prior Order, The Honorable Judge Michael Devine of the Fairfax County Circuit Court had rejected two theories of vicarious liability raised by the Plaintiff: 1) based on a non-delegable duty under Restatement 2nd Torts § 428, and 2) based on joint business venture. JA106-116. He did not address the question of vicarious liability through *respondeat superior* and he did not dismiss Fairfax Taxi from the case. JA106-116.

In accordance with Va. Code Ann. § 8.01-380 and 8.01-299 (E)(3), the Plaintiffs recommenced the current action against the Defendants on December 21, 2023 in the U.S District Court for the Eastern District of Virginia. Plaintiffs. JA38-53. Following a series of motions by Defendants, and a More Definite Statement by Plaintiff, Judge Hilton dismissed Fairfax Taxi from the case concluding that the question of vicarious liability through *respondeat superior* was *res judicata* as well as the other two theories previously addressed by Judge Devine. JA101-105. Upon Reconsideration, Judge Hilton confirmed that his ruling applied to theory of

*respondeat superior*. JA119., and he confirmed this opinion when he denied

Plaintiffs' Motions for Interlocutory Appeal. JA6, JA16.

The Plaintiffs filed a timely Expert Designation and named 9 experts, but

inadvertently failed to file the attachments, including the affidavit of Michael

Miller, an accident reconstructionist. JA134-161. Neither party noticed the lack of

attachments until February 2025, at which point Plaintiffs moved to file Michael

Miller's affidavit late. The trial was scheduled for June 23, 2025.[1] Judge Hilton

denied this motion on the grounds that this late filing was not harmless or justified.

JA403-406. He further made factual determinations that the record did not support

Mr. Miller's opinion, and therefore was speculative. JA406-407.

Upon the Defendant's Motion, Judge Hilton then granted Summary

Judgment to the remaining Defendant, Evelyn Kenin, Administrator of the Estate

of Amoah Gyimah, concluding that there was no genuine issue of material fact

regarding Mr. Gyimah's negligence. JA414-419. The Plaintiffs provided the

following material facts to dispute the Defendant's Motion for Summary

Judgment.[2]

---

[1] The Defendant Kenin had previously failed to file a timely Answer to the Complaint, through inadvertence. Two months later, Defendant Kenin filed an answer and moved the Court to accept the late filing. The Court granted this Motion. JA117, JA120-165.

[2] In addition, Plaintiffs disputed several of the Defendant's Statement of Undisputed Material Facts.

1. **<u>Jung Consistently Recollected That Mr. Gyimah Was Using an Electronic Device Prior To The Collision, That Northbound Traffic Was Light and Not Blocked by Any Cars in The Right Lane.</u>**

Jung,[3] is the only person involved in the collision who is available to testify.[4] regarding any of the events immediately preceding the collision.

While Jung does not recollect the split second of the actual collision, he consistently stated that he has memories of events in the taxi cab just prior to the crash.

o In Interrogatories, he said Gyimah had an electronic device in his right hand and there was another tablet attached to the dashboard of the Red Top Cab. JA274-276.

o In Deposition, he said at the time of the collision and immediately prior thereto, Gyimah was typing and looking at his electronic device (s) (phone or pad or other electronic device) and not at the road or the dangers on the roadway." JA340, JA348-349, JA350-351. [5]

---

[3] Jung was deposed in English, but it is not his native language.

[4] Kim and Gyimah died as a result of the collision and Jewett suffered severe brain injury and has no memory of the event preceding the collision or the collision itself. See JA166, JA167.

[5] This answer was changed by Jung in his errata. In the deposition he said, "No, no, no. Just down, down -- his hand was down, yeah, and then he hold his phone and his phone was not -- yeah, that upside; the downside" JA351.

o He told the US Park Police when they interviewed him in the hospital on the day of the collision. that the taxi driver being on his phone while driving. JA319-320.

o In Deposition, he said there was an iPad type device on the dashboard.[6] JA340

o In Deposition, he said his last memories he had prior to collision were being in the taxi and driving on the road, and watching the scenery from the rear passenger seat (that the right lane was not blocked with cars so he could see the trees and the river). JA334, JA337-338, JA346, JA350.

## 2. Timothy Bracken Corroborated Jung's Testimony.

On April 29, 2019, Mr. Timothy Bracken, an Army officer who spent most of his career in the military with significant experience as a helicopter pilot in war zones, testified that he had training and experience in treating trauma. JA356-359.

Bracken testified that on April 29, 2019 he was driving in the left lane of the northbound side of the George Washington Parkway at about 4 pm, and northbound traffic was light. JA359, JA362. He testified that there were 2 lanes on both the north and south bound sides, which were only separated by a double yellow line. JA360-361. He stated that he did not see the collision, but he came

---

[6] This was confirmed by Kyle Summers, the Chief Executive Officer of Transportation General, Inc. which managed Fairfax Taxi. JA375-377, He stated that Fairfax Taxi placed an Android tablet on the dashboard of each taxi. Id.

upon it immediately after the crash and he was the first person to reach the Red Top taxicab. JA359-360.He noted that as he approached the vehicles were still smoking. Id Bracken testified in depth about his attempts to help save the driver of the Red Top Cab, Gyimah. JA363-366. Bracken corroborated Jung's recollection of Gyimah using an electronic device: he testified that there was phone on the driver's lap when Bracken arrived on the scene. JA367.

3. **John McDonald, A Retired Police Captain, Testified That There Was No Evidence That Gyimah Attempted to Avoid the Collision.**

During deposition, John McDonald, a retired police Captain who served 25 years with the Washington DC Police. JA382-384. As a police officer he had experience and training in investigating automobile collisions. JA383. On April 29, 2019, he was travelling southbound on the GW Parkway, and heard a "huge explosion," which he immediately recognized as a collision. JA384-385. The portion of the GW Parkway where he was driving was only separated by a double yellow line. JA387. He could not ascertain which car crossed the double yellow line. Id.

> It appeared to -- appeared to me that both vehicles met right about the driver side of both vehicles. I don't know who crossed over. I don't know if they both crossed over.

JA387.

He heard the explosion of the vehicles and saw a cloud of dust as well as one of the cars was still spinning as he approached. JA385. Moreover, he testified that

6

he had been driving with his windows down and did not hear any skidding noises prior to hearing the sound of the collision. JA387-388. He testified that he would have recognized a skidding sound if he had heard such a sound. JA388. If the cab driver had hit the brakes to avoid the collision there would be skidding.

4. **<u>Roger Daven Oswalt Testified That He Observed the Collision but Cannot Tell Who Crossed the Double Yellow Line.</u>**

During deposition, Roger Daven Oswalt testified that he was traveling southbound on the GW Parkway on April 29, 2019. JA394. He described the road at that time as having two northbound lanes and two southbound lanes divided by a double yellow line. JA395. Oswalt was travelling one car behind the VW, and witnessed the collision. JA397. He could not testify which car crossed the double yellow line or whether anyone braked to avoid the collision. JA397-398, JA400-401. Although Oswalt could not confirm whether Gyimah or Jewett or both crossed the double yellow line, he did specifically state, "It appeared that both cars were very close to the center." JA397, JA400-401. He ran to the cab after the crash. JA396-397.

5. **<u>The Diagram of The Collision from The US Park Police Investigation Shows No Skid Marks or Attempts by Gyimah to Avoid the Collision and The Photographs Show That the Vehicles Crashed Head On.</u>**

The US Park Police investigating the collision, included a drawing of the conditions of the road and the locations of the two vehicles following the collision. JA302. There are clearly no skid or tire marks on the northbound side of the GW

Parkway. The photographs clearly show that the cab and the Volkswagen crashed head to head on the driver's side of each vehicle. JA284-286, JA293-295, JA308-313, JA326. There was no traffic in the northbound right lane identified (where the cab could have gone to avoid the collision).Thus, a jury could easily conclude that Gyimah made no attempt to avoid the collision by braking at the last minute, and that he was driving too fast for the then conditions or that he failed to pay full time and attention to the road and his driving.

6. **Plaintiff's Expert Affirmed That That Gyimah Could Have Made Efforts to Avoid the Collision, And He Did Not.**

Mr. Michael Miller,  is experienced in accident reconstruction. He reviewed the evidence in this case. JA212. Based on this evidence he wrote in his affirmation that more probable than not had Gyimah been paying full time and attention just before and at the time of the collision, that the collision would not have occurred, or at a minimum, would have been less severe. He affirmed that, more probably than not, that either one or both vehicles crossed the yellow line. Even if the taxi cab did not cross the double yellow line, he affirmed that more probably than not,

> Had Gyimah been paying full time and attention he could have avoided the collision. It appears that there were not any vehicles to the right of the Red Top Cab being driven by Gyimah. Thus, more probably than not Gyimah could have swerved to the right to avoid the collision.
> . . .
> Gyimah did not attempt to brake or slow down in the seconds prior to the collision. Had he attempted to use his brakes, more probably than

8

not he could have avoided the collision or the impact of the collision
would have been less severe

JA212..

Despite this abundance of circumstantial evidence that Mr. Gyimah was negligent, Judge Hilton appropriated the role of the jury and granted Summary Judgment.

## SUMMARY OF THE ARGUMENT

The trial court usurped the role of the jury in two respects: **1)** by ruling, based solely on the initial pleadings, that the taxicab driver, Amoah Gyimah, was an independent contractor of Fairfax Taxi, Inc., and **2)** finding that there was no genuine issue of fact on the question of negligence despite a plethora of circumstantial evidence that Mr. Gyimah was negligent. Judge Hilton erred in his interpretation of Virginia's non-suit statute by finding that the question of Fairfax Taxi's vicarious liability was *res judicata* particularly where trial judge in the prior case (in Virginia Circuit Court), which had been non-suited , had not dismissed Fairfax Taxi, Inc. but merely struck two (of three) theories of liability. The trial Court also erred in concluding that circumstantial evidence of Gyimah's negligence did not rise to a level of a genuine issue of material facts. This Court, therefore, must reverse these findings and remand for a full trial.

Finally, the trial judge abused his discretion by denying the Plaintiffs an extension of time to file an attachment to their expert designation, as this was a result of a clerical error and where there was no prejudice to the Defendant.

## ARGUMENT

### I  THE TRIAL COURT ERRED BY DISMISSING FAIRFAX TAXI, INC. BASED SOLELY ON THE PLEADINGS.

#### 1.  Standard Of Review

This Court should review the district court's ruling pursuant to Fed. Rule Civ. Pro. 12(c) that there were no plausible set of facts to support a finding of Fairfax Taxi's vicarious liability *de novo*. Drager v. Pliva, 741 F.3d 470, 474 (2014)( citing Butler v. United States, 702 F.3d 749, 751 (4th Cir.2012).

> [A] motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."

Drager, 741 F.3d at 474 (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999).

## 2. The leniency of Virginia's Non-suit statute requires this Court to conclude res judicata should not apply to the question of *Respondeat Superior*.

Section 8.01-380 of the Virginia Code allows a Plaintiff to voluntarily nonsuit a case, and can recommence that matter within six months of the nonsuit.[7] See Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984). This Court has held that the impact of the nonsuit and the refiling of the matter is that the **first case is deemed a nullity**. Tysons Toyota v. Globe Life Ins. Co., No. 93-1359, No. 93-1443, No. 93-1444, 1994 U.S. App. LEXIS 36692, at *18-19 (4th Cir. Dec. 29, 1994 (attached)(*Res judicata* was not a bar and the only effect of a non-suit is to put an end to the pending litigation without prejudice to either party). The Court explained:

> [Plaintiff] chose to exercise her right to take a voluntary nonsuit. However, once she did so, it was as if the 2010 action had never been filed, as a nonsuit "leaves the situation as if the suit had never been filed." . . .. For any aspect of the 2010 action to be incorporated into the 2012 action, an order had to explicitly permit it.

Temple v. Mary Wash. Hosp., Inc., 288 Va. 134, 140, 762 S.E.2d 751, 754 (2014) (quoting Winchester Homes Inc. v. Osmose Wood Preserving, Inc., 37 F.3d 1053,

---

[7] "A plaintiff has an absolute right to one nonsuit. The election is his and if he insists upon taking the nonsuit within the limitations imposed by the statute, neither the trial court nor opposing counsel can prevent him from doing so." Nash, 227 Va at 237. The Plaintiff may recommence the action in Federal Court. Va. Code Ann. § 8.01-380 (A).

1058 (4th Cir. 1994)(applying Code § 8.01-380) and quoting <u>INOVA Health Care</u>

<u>Servs. v. Kebaish</u>, 284 Va. 336, 344, 732 S.E.2d 703, 707 (2012)).

"'[T]he action' subject to a plaintiff's nonsuit request is comprised of the

claims and parties remaining in the case after any other claims and parties have

been dismissed with prejudice or otherwise eliminated from the case." <u>Dalloul v.</u>

<u>Agbey</u>, 255 Va. 511, 514, 499 S.E.2d 279, 281 (1998). The Virginia Supreme

Court has

> [A]lways characterized a refiled action after a nonsuit as a "new" action. <u>Laws v. McIlroy</u>, 283 Va. 594, 600, 724 S.E.2d 699, 702 (2012). **A "new action stands independently of any prior nonsuited action**." Id. (quoting <u>Antisdel v. Ashby</u>, 279 Va. 42, 47, 688 S.E.2d 163, 166 (2010)). The "action" that remains subject to a plaintiff's nonsuit request is comprised only of the claims and parties remaining in the case after any other claims and parties have been dismissed with prejudice or otherwise eliminated from the case. <u>Dalloul v. Agbey</u>, 255 Va. 511, 513-14, 499 S.E.2d 279, 281 (1998).

<u>Temple,</u> 288 Va at 139-40 (emphasis added)

In the instant case, the remaining claim was the only claim asserted: joint

and several liability for Gyimah's negligence. Further, the remaining Defendants[8]

were Kenin, Administrator of the Estate of Gyimah, Fairfax Taxi and Red Top

Cab, LLC.[9] JA115-116. While Judge Devine addressed and dismissed with

prejudice two of the three legal theories regarding Fairfax Taxi's liability for

---

[8] Several Defendants had been previously non-suited.

[9] Red Top Cab, LLC was named in the above captioned cases, but was not served.

Gyimah's negligence, he did not dismiss a third claim or Fairfax Taxi as a party (or any other Defendant) in his ruling. JA106-116.

The above captioned cases are new actions that stand independently of the cases in Fairfax County Circuit Court. Like the prior rulings in <u>Temple,</u> Judge Devine's rulings (as well as all the other rulings from the Fairfax County Circuit Court) are now a nullity. Again, it should be noted that none of these orders[10] addressed the question of vicarious liability through *respondeat superior*. JA110, JA113.

Here, the pleadings in both the state and federal cases, unequivocally stated three theories of liability by Fairfax Taxi for Gyimah's negligence: 1) Fairfax Taxi is vicariously liable for Gyimah's negligence because he was an employee and/or authorized agent and/or apparent agent of Fairfax Taxi, and was acting within the scope of his employment and/or authority and/or his apparent authority; 2) Fairfax Taxi had a non-delegable duty based on the Restatement 2nd of Torts §428; and 3) Fairfax Taxi and Gyimah were partners in a joint venture, JA23-24, JA31-32, JA40-41, JA48-49, JA55-56, JA64-65, JA72-75. Fairfax Taxi did not seek to dismiss the theory of liability based on *respondeat superior*, and Judge Devine did not make any rulings on this theory. Fairfax Taxi remained a Defendant when the

---

[10] None of these Orders were Final Orders and the Trial Court denied Plaintiffs' Motion for an Interlocutory Appeal on these issues. JA6, JA16.

non-suit was taken, because this theory of liability remained a part of the case. JA99-100, JA115-116. Nor did the Defendants claim such in their motion in the trial court. The issue was first raised by Judge Hilton in his rulings.

Judge Hilton misinterpreted Judge Devine's holding. He concluded that because Judge Devine distinguished the facts of <u>Belcher v. Dandridge</u>, 61 Va Cir. 684 (Va. Cir. 2002), that the state court had addressed the question of *respondeat superior*, and consequently this theory of liability could not maintain a cause of action following the non-suit. JA110-111. Given that Judge Devine had not dismissed Fairfax Taxi from the case but had discarded only two of the three theories of liability, the question of whether Gyimah was an employee of Fairfax Taxi remained. It was clear error for the trial court to dismiss Fairfax Taxi based on the theory of *res judicata*.

In Virginia, "The doctrine of *respondeat superior* imposes tort liability on an employer for the negligent acts of its employees, i.e., its servants, but not for the negligent acts of an independent contractor." <u>Curran v. Axon Enter., Inc</u>., 712 F.Supp.3d 717, 727 (E.D. Va. 2024) (attached) (citing <u>Sanchez v. Medicorp Health Sys</u>., 270 Va. 299, 305, 618 S.E.2d 331, 334 (2005); see also Restatement (Second) of Torts § 409. **Determining whether an individual is an employee or an independent agent is a factual question reserved for the jury**. <u>Majorana v. Crown Cent. Petroleum Corp</u>., 539 S.E.2d 426, 260 Va. 521 (2000) (citing

Kensington Associates v. West, 234 Va. 430, 432-33, 362 S.E.2d 900, 901 (1987) and Plummer v. Center Psychiatrists, Ltd., 252 Va. 233, 476 S.E.2d 172 (1996)); see also Stith v. Thorne, 488 F.Supp.2d 534, 549 (E.D. Va. 2007; Atkinson v. Sachno, 261 Va. 278, 284, 541 S.E.2d 902, 905 (2001).

> Four factors enter into determination of the question whether a master-servant relationship exists within the contemplation of the doctrine of respondeat superior, (1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4) power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

Hadeed v. Medic-24, Ltd., 237 Va. 277, 377 S.E.2d 589, 594-595 (1989). "It is immaterial whether the employer exercises this control; the test is whether the employer has the power to exercise such control." McDonald v. Hampton Training School for Nurses, 254 Va. 79, 81 486 S.E.2d 299, 300-301 (1997) (citing Smith v. Grenadier, 203 Va. 740, 746, 127 S.E.2d 107, 111-12 (1962)). Indeed, the Fourth Circuit recently held in a FLSA case that the test for determining whether one was an employee or an independent contractor is a fact-intensive inquiry, that allows for flexible application to the facts of each employment relationship. Chavez-Deremer v. Med. Staffing of Am., 23-2176, 23-2284, *32 and *39 (4th Cir. Jul 17, 2025) (attached). In Med. Staffing, this Court indicated,

> "[L]ack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." ... Rather, a court conducting such an analysis should assess the control factor through the focal point" of economic dependence: That is, "whether the worker has

control over such a meaningful portion of his labor that he operates as a separate economic entity."

Med Staffing at *38 (quoting Parrish v. Premier Directional Drilling, L.P., 917 F.3d 369, 381 (5th Cir. 2019), Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006), and Brant v. Schneider Nat'l, Inc., 43 F.4th 656, 666 (7th Cir. 2022))..

Here, Plaintiffs **alleged that Fairfax Taxi was an employer in fact of Mr. Gyimah**. That is a question to be determined by the jury. Majorana 539 S.E.2d 426, 260 Va. 521; McDonald ,254 Va. 70 (1997). Had this issue gone to trial, the Plaintiffs had significant evidence that could have supported a finding of employment, some are not part of the record because this issue was never fully argued but was raised the trial Judge *sua sponte*.

- Gyimah had a "hacker's" license issued by Fairfax County; JA180, JA209
- Fairfax Taxi had a Taxicab Operator's Certificate issued by Fairfax County; JA189, JA208[11]
- Fairfax Taxi had a Taxicab Operator Permit issued by of Virginia; JA180, JA207.
- Fairfax Taxi and Gyimah were parties to an Operator's Agreement; JA82-98.

---

[11]Had this issue gone to trial, Carl Newcomb, who was the Branch Chief Regulation and Licensing of , Fairfax County, and oversaw the administration/regulation of taxicab industry in Fairfax County would have been called to describe Fairfax County's taxicab industry and the specific documents in this case.

- Further, the Operator's Agreement specifically states:
  o Fairfax Taxi's operates pursuant to a Certificate of Public Convenience and Necessity issued by Fairfax County, which is an authorization by the County for Fairfax Taxi to operate a taxicab company with a limited number of cars; JA82, JA84.
  o Gyimah intends to operate a taxicab in compliance with Chapter 84.1 of the Fairfax County Ordinances and under the Company's authority; JA82, JA84.
  o Fairfax Taxi is subject to and in accordance with the Fairfax County Ordinances, grants a license to Gyimah to utilize a vehicle with a specific number that coordinates with this license; JA84
  o Gyimah acknowledges that the vehicle number is the property of the County and the Company JA84.
- The cab driven by Gyimah was the cab covered by the Certificate and contemplated by the Agreement. JA179, JA181.
- Gyimah was required to use Red Tops color scheme on the cab. JA85-86, JA180-181.
- Fairfax Taxi through its management company owned and controlled the dispatch taxi system. JA85.[12]
- Gyimah had an Android tablet mounted on his dashboard that Fairfax Taxi required him to use in order to receive dispatches. Gyimah could talk or text through this tablet, which was connected through a cellular service paid for by Fairfax Taxi.[13] JA85, JA96, JA375-376.

---

[12]Kyle Summers testified to this in deposition and was to be called as an adverse witness by Plaintiffs had this case gone to trial. JA371-377.

[13]Summers also stated this in deposition. He further stated that the particular Android tablet in Gyimah's cab was lost and Summers did not know what cellular service was in use on this tablet.

- Gyimah responded to the call from Dr. Jung to Red Top requesting the cab through the dispatch system. JA167.

- Mr. Gyimah also had a credit card reader in his car that was owned by Fairfax[14]. JA87-88, JA96, JA376-377.

Thus, Gyimah could only drive the cab as permitted by Fairfax Taxi according to the hack license, the Operator's Agreement and the Certificate of Public Convenience, and the regulatory scheme created by the Commonwealth and Fairfax County. Va. Code Ann. § 46.2-2065; FFX Cty Ord. §§ 84.1-1-1 and 1-2; 84.1-2-1 2;84.1-2-5, 2-6, 2-7(c), 2-9, 2-10 and 2-11; 84.1-3-1 and 3-2; and 84.1-9-1. Fairfax Taxi had ultimate control over Gyimah regardless of whether they always exercised it.

Judge Hilton, however, usurped the role of the jury and made a factual determination that Gyimah was not an employee. The trial court also did not recognize that when the non-suit was granted, that Fairfax Taxi had still been a party in the state action upon the theory of vicarious liability by *respondeat superior*. This was clear error, and this court should reverse the trial court's findings that Gyimah was an independent contractor, that the issue of vicarious liability upon the theory of *respondeat superior* was *res judicata* and remand this case for a trial.

---

[14] Summers described this system in his deposition.

**II   THE TRIAL COURT ERRED  BY GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS DESPITE A GENUINE QUESTION OF FACT PRESENTED BY PLAINTIFFS THROUGH CIRCUMSTANTIAL EVIDENCE.**

**1. Standard Of Review:**

This Court reviews the district court's grant of summary judgment *de novo*. Gowen v. Winfield. 130 F.4th 162, 171 (4th Cir. 2025) (citing Reyes v. Waples Mobile Home Park Ltd. P'ship, 91 F.4th 270, 276 (4th Cir. 2024).

> **Summary judgment is appropriate only if  "there is no genuine dispute as to any material fact** and the movant is entitled to judgment as a matter of law "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party

Gowen. 130 F.4th at 171-172 (emphasis added) Reyes, 91 F.4th at 276 and Fed. R. Civ. P. 56(a)); Kritter v. Mooring, Case No. 24-1158  *7 (4th Cir. Jul 08, 2025) (attached) (in a diversity case sufficiency of the evidence to create a jury question is a matter governed by federal law.) "All facts and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018) (citation omitted). "The relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [A] factual dispute is genuine only where the [non]movant's version is supported by sufficient evidence to permit a reasonable jury to find in its favor." <u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc</u>. , 790 F.3d 532, 540 (4th Cir. 2015) (citation and internal quotation marks omitted). ". . .  "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." <u>Dash v. Mayweather</u> , 731 F.3d 303, 311 (4th Cir. 2013).

<u>US v. 8.929 Acres of Land in Arlington County, Virginia</u> , 36 F.4th 2, 252 (4th Cir. 2022).

Here, Judge Hilton improperly concluded that merely because there was no eyewitness to the actual collision that there was insufficient evidence to provide a genuine issue of material fact. This conclusion belies the circumstantial evidence that could lead a jury to conclude that Gyimah was a joint tortfeasor (that he did not make any efforts to avoid the collision). In other words, as will be detailed below, there is sufficient evidence to prove that Gyimah was a joint tortfeasor. As described below, witnesses testified that they were only a few cars behind the cars involved in the collision, that they heard the collision, that they observed what happened split seconds before and after the crash, and they immediately ran to the crash site to aid the victims.

**2. <u>There Is Sufficient Circumstantial Evidence to Prove That Gyimah Was Negligent.</u>**

A material fact in dispute may be proven by circumstantial evidence. [15] <u>Commonwealth v. Hudson</u>, 265 Va. 505, 514 578 S.E.2d 781, 786 (2003)("While no single piece of evidence may be sufficient, the `combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'"). The circumstantial evidence supporting or refuting a Plaintiff's case is not speculative evidence even if there are no eyewitnesses. <u>Tennant v. Peoria & Pekin Union Ry.</u> , 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944). Because the evidence of causation in unwitnessed cases is often entirely circumstantial and the result must depend on the inference to be drawn from the circumstantial evidence. <u>Norfolk Southern Rwy. Co. v. Sumner</u>, 822 S.E.2d 809 (Va 2019) (In an unwitnessed case of an injury on the railroad was supported circumstantial evidence and the Virginia Supreme Court concluded that the decision was within the province of the jury). This Court defined speculative evidence as that which crosses "[T]he line from conceivable to plausible." <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)(citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Where, as

---

[15] Virginia law should be applied as the question of liability is one of substantive law. 36 C.F.R. § 4.2 (State law applies to traffic and the use of vehicles within the property of US National Park Service);  <u>Salve Regina College  v. Russell</u>, 499 U.S. 225, 226 (1991); <u>Erie R. Co. v. Tompkins,</u> 304 U.S. 64, 78, 58 (1939).

here, either the facts are in dispute or more than one inference can be drawn from the evidence, these issues of fact must first be resolved by the jury." <u>Kritter,</u> Case No. 24-1158 *11 (citing <u>Peyton v. Reynolds Assocs.</u>, 955 F.2d 247, 253 (4th Cir. 1992).

Given that the evidence must be viewed in the light most favorable to the Plaintiffs, this Court must consider the circumstantial evidence that supports a finding that Gyimah was distracted, not paying attention (and may have crossed the double yellow line)  and/or could have avoided the collision by either braking, or moving to the right.

The pleadings specifically alleged the following:

> 1.  "[E]ither one or both  vehicles crossed the double line into the lane travelling in the other direction." JA78.
> 2.   "At the said time of the collision and immediately prior thereto, Gyimah was using and looking at his electronic device (s) (phone or tablet or other electronic device) and not at the road or the dangers on the roadway." JA78,
> 3.  "[H]ad Gyimah been paying attention to the roadway and particularly the vehicle driven by Jewett, he could have and should have avoided the collision, by moving into the right lane headed northbound attempting to stop the Red Top Cab, and/or otherwise moved out of the way of the impending collision. JA78..

As detailed above, there is a significant amount of circumstantial evidence that Gyimah failed to pay proper time and attention and was distracted and either crossed the double yellow line, or failed to avoid the collision by braking or moving the Red Top cab to the right lane. Jung's last memory was that Gyimah

22

was using an electronic device. JA274-276, JA319-320, JA340-343, JA348-351. Bracken, who was the first person on the scene following the collision, found an electronic device on Gyimah's lap. JA367-368. There is no evidence Gyimah attempted to avoid the collision or brake. Thus, it is possible that a jury could determine that Gyimah was using an electronic device immediately prior to the collision and was distracted and not paying full time and attention to the road. Therefore, the jury could reasonably find that Gyimah was negligent because he either crossed the double yellow line or in failed to recognize the danger and avoid the collision by braking or moving to the right.

Further, Bracken, who was driving northbound on the GW Parkway testified that the northbound traffic was light. JA359, JA362. McDonald, a DC police officer, was driving southbound with his windows open a few cars back from Jewett. McDonald heard the collision, but did not hear any skidding sounds (which he would clearly have recognized). JA382-384, JA387-388. The diagram of the scene drawn by the US Park police confirms that there were no skid marks on the northbound side, JA302. Thus, a jury could conclude that Gyimah did not attempt to avoid the collision by moving to the right or braking, and therefore was negligent. Plaintiffs' expert, Miller, supports this conclusion.[16]

---

[16] There was an additional witness, Robert Ahlers, who testified in deposition that the speed of the southbound traffic prior to the collision was between 15-30 mph.

Also, Oswalt was driving southbound only a few hundred yards behind Jewett. He cannot confirm whether Gyimah or Jewett or both crossed the double yellow line, but noticed that both cars were very close to the center." JA401. Thus, a jury could conclude that Gyimah also crossed the double yellow line, or was driving too close to the double yellow line such that he was paying full time and attention and was unable to avoid the collision. Miller, Plaintiffs' uncontroverted expert, supports this conclusion. The physical evidence and photos of the vehicles show that the collision was head-on, driver to driver but not the passenger side of the vehicles.

Combined this circumstantial evidence is not improper, speculative, and prohibited as character evidence under F.R.E 404(a)(1). The fact that Jung cannot pinpoint the exact second that he recalls seeing Gyimah use his electronic device is not impermissible, speculative character evidence. Jung's testimony is not that Gyimah always used his electronic device, or had a habit of using his electronic device while driving, but rather his testimony **is that was the last thing Jung remembered before he passed out from the effects of the crash**. This testimony coupled with Bracken's testimony that he found an electronic device on the driver's lap can lead to the reasonable inference that Gyimah was using an

His testimony was not part of the record, because the trial court raised the issue of the speed of the vehicles and the presumptive stopping distance sua sponte in its Orders.

electronic device just prior to the collision and was distracted. It was clearly improper for Judge Hilton to assume the jury's role to conclude that this evidence was merely the result of a bad collision.

Accordingly, there is ample circumstantial evidence that Gyimah was negligent. Therefore, there is sufficient evidence to permit a reasonable jury to find in that Gyimah was negligent. See 8.929 Acres of Land in Arlington County, Virginia , 36 F.4th at 252. This Court should therefore reverse the trial court's ruling and remand this case for a full trial.

### 3. A Jury Can Find That Gyimah's Negligence Was a Concurrent Proximate Cause of The Plaintiff's Injuries.

In Virginia, "The proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Dorman v. State Indus., Inc., 292 Va. 111, 122, 787 S.E.2d 132, 139 (2016), (quoting Kellermann v. McDonough, 684 S.E.2d 786, 793 (Va. 2009); Adams v. Naphcare Inc., cv 2:16-cv-229 (ED VA 2016) (attached). Any consequent injury must have been reasonably foreseen by the exercise of reasonable care. See RGR, LLC v. Settle, 764 S.E.2d 8, 20 (Va. 2014); Maroulis v. Elliott, 151 S.E.2d 339, 344 (Va. 1966) ("Liability ensues when injury results from a risk or hazard which may be reasonably foreseen, although the precise injury may not be foreseen."). Questions of proximate cause are within the province of a jury. Generally, issues of

negligence and proximate causation are questions of fact for the jury's determination. Generally, issues of negligence and proximate causation are questions of fact for the jury's determination. Rascher v. Friend, 279 Va. 370, 378 (Va. 2010) (proximate cause is generally a jury question "because the particular facts of each case are critical to that determination"); Kellermann, 684 S.E.2d at 793 (citing Estate of Moses ex rel. Moses v. Southwestern Va. Transit Mgmt. Co., 273 Va. 672, 679, 643 S.E.2d 156, 160 (2007); Jenkins v. Payne, 251 Va. 122, 128, 465 S.E.2d 795, 799 (1996); Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985); Armstrong v. Rose, 170 Va. 190, 200, 196 S.E. 613, 616 (1938)).

Moreover, there can be more than one proximate cause of an injury. Harman v. Honeywell Int'l, Inc., 758 S.E.2d 515, 526 (Va. 2014); Rascher, 279 Va. at, 378; Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966); Murray v. Smithson, 187 Va. 759, 764, 48 S.E.2d 239, 241 (1948). In such cases,

> [I]n determining the liability of a person whose concurrent negligence results in such an injury, **comparative degrees of negligence shall not be considered and both wrongdoers are equally liable irrespective whether one may have contributed in a greater degree to the injury.** Accordingly, each such wrongdoer is responsible for an equal share of the amount paid in damages for a single injury.

Sullivan, D.O. v. Robertson Drug Co., Inc. 639 S.E.2d 250, 255(2007) (emphasis added) (citing Maroulis, 207 Va. at 510, 151 S.E.2d at 344; Von Roy v. Whitescarver, 197 Va. 384, 393, 89 S.E.2d 346, 352 (1955); Murray, 187 Va. at

764, 48 S.E.2d at 241; <u>Richmond Coca-Cola Bottling Works, Inc. v.</u> <u>Andrews</u>, 173 Va. 240, 250-51, 3 S.E.2d 419, 423 (1939).

If multiple negligent actions concurred in producing, or contributed to the result, the law is clear: "[A] litigant 'can not [sic] be exonerated by urging and showing the negligence' of other parties or nonparties." <u>Blanchard v. Richmond Traffic Control, Inc,</u> Va Ct app. No. : 1871-23-2 (Va Ct App 2024) (quoting <u>Von Roy</u>, 89 S.E.2d 346, 197 Va. at 393; <u>Carolina, Clinchfield & Ohio Ry. Co. v. Hill</u>, 119 Va. 416, 421 (1916). Indeed, in <u>Ford Motor Co. v. Boomer,</u> 285 Va. 141; 736 S.E.2d 72, (Va 2013), the Virginia Supreme Court explained its adoption of the Restatement (Third) of Torts §§ 26 (factual cause) and 27 (multiple sufficient causes) in the context of an asbestos injury.

> <u>The but-for standard provided in § 26 is a helpful method for identifying causes, it is not the exclusive means for determining a factual cause. Multiple sufficient causes are  also factual causes</u> because we recognize them as such in our common understanding of causation, even if the but-for standard does not.
> . . .
> The multiple sufficient cause analysis allows multiple tortfeasors to be found jointly and severally liable.

<u>Ford Motor Co.</u>, 285 Va. at 156 (emphasis in the original). Indeed, the Virginia General Assembly recognized that multiple tortfeasors can be the proximate cause of an injury by enacting Va Code § 8.01-443 (allowing separate or joint lawsuits and not barring recovery if there is a judgment or settlement against one tortfeasor and not other tortfeasors).

In <u>Von Roy,</u> Mr. Von Roy was driving in front of Mr. Whitescarver's car. Mr. Von Roy attempted to make a left turn, but failed to see Ms. Crowe's car coming from the other direction at about 45-50 mph. Ms. Crowe maneuvered her car, but ultimately skidded and collided with Mr. Whitescarver. The Court rejected Mr. Von Roy's argument that it was not his negligence (failing to properly look for oncoming traffic) that caused Mr. Whitescarver's injuries, but rather the sole proximate cause of Mr. Whitescarver's injuries was Ms. Crowe's negligence.[17] The Virginia Supreme Court concluded,

> If two defendants are negligent one of them can not be exonerated by urging and showing the negligence of the other. Where the **concurring** negligence of the two produces a single injury and each is its proximate cause they are both liable.

<u>Von Roy</u>, 89 S.E.2d at 352 (emphasis added).

Similarly, in <u>Richmond Coca-Cola Bottling Works, Inc, v. Andrews</u>, 173 Va. 240; 3 S.E.2d 419 (Va. 1939) the Virginia Supreme Court found concurrent negligence and liability in a three car collision. The plaintiff was a passenger in a vehicle driven by Mr. Quisenberry. Mr. Quisenberry was following the car in front of him too closely and collided with that car when it stopped at a red light. A truck driven by an employee of the Richmond Coca-Cola Bottling Works, was following Mr. Quisenberry too closely and collided with Mr. Quisenberry's vehicle. Id. The

---

[17] Ms. Whitescarver had been found liable by a jury, and she did not appeal that judgment.

Plaintiff testified that all of his injuries were the result of the second collision (the truck hitting Mr. Quisenberry's vehicle). Nevertheless, the Virginia Supreme Court held, "[I]t does not necessarily follow from this that the second collision was the sole proximate cause of his injuries if the first collision made the second collision inevitable, as we think it did." Richmond Coca-Cola Bottling Works, Inc, 173 Va at 248.

Here, even if Jewett crossing the double yellow line was the primary cause of the collision, there is sufficient evidence that a jury could find that Gyimah was concurrently negligent and a joint tortfeasor. As detailed above, a reasonable jury could conclude that Gyimah was using an electronic device immediately prior to the collision and was distracted, that Gyimah failed to avoid the collision by moving into the right hand lane or attempting to brake, that he failed to pay full time and attention to his driving, and that he also crossed the double yellow line, or was travelling too close to the double yellow line to avoid the collision. Thus, Judge Hilton erred by drawing his own factual conclusions.

4. **Judicial Notice of Speed and Stopping Distance Does Not Create a Presumption and Should Not Be Applied Absent Evidence of Actual Speed of Vehicles.**

Moreover, Judge Hilton erred by applying Va Code § 46.2-880 and concluding that Gyimah could not have avoided the collision. JA412. First, while section 46.2-880 allows a court to take judicial notice of speed and stopping

29

distances, it "shall not raise a presumption, in actions in which inquiry thereon is pertinent to the issues" Va Code § 46.2-880; see also <u>Seamster v. Taylor</u>, Civil Action 4:21-cv-00021 *20 (W.D. Va. Jun 15, 2022) (attached). While there was some evidence of speed there was substantial circumstantial evidence that Gyimah was distracted, and made no attempt to avoid the accident by moving to the right, or swerving. JA274-276, JA302, JA319-320, JA340-343, JA348-351, JA359, JA362, JA367-368, JA382-384, JA387-388 Thus, even if Gyimah could not have stopped, a jury could find that if he had been paying full time and attention to the road he could have avoided or lessened the impact of the collision. As noted above, see fn. 12 *supra*, Ahlers testified in deposition that the speed of traffic was slower than 45 mph. His testimony is not part of the record because the travel speed and stopping distance was not argued but was raised the trial judge *sua sponte*. Further there was some evidence that Gyimah may have crossed the double line. JA401 Judge Hilton clearly appropriated the role of the jury when he made the ultimate conclusion of fact that Gyimah could not have avoided the collision.

Even if Judge Hilton properly denied the motion to file the attachments to the Expert Designation late, and properly excluded Mr. Miller's testimony it was error to grant summary judgment, see Argument III *infra*, based on the speed of the vehicles and the fact that there are no eyewitnesses. This was a clear encroachment

of the role of the jury. Accordingly, this Court should find that Judge Hilton erred

and reverse his grant of summary judgment and remand the case for a full trial.

**III    THE TRIAL COURT ERRED BY DENYING PLAINTIFFS' MOTION TO FILE THE ATTACHMENTS TO THE EXPERT DESIGNATION LATE AS THERE WAS NO HARM OR PREJUDICE TO THE DEFENDANTS.**

### 1. Standard Of Review

A Court of Appeals reviews a District Court's Order denying a late filing of

the attachments to the expert designation for abuse of discretion. Wilkins v.

Montgomery, 751 F.3d 214, 220 (4th Cir. 2014).

### 2. The Late Filing of The Expert Designation Would Not Cause Harm, Surprise, Disrupt the Trial Was Important and Was Inadvertent.

The Court should consider the following factors in determining whether to

accept the late filing:

> (1) the surprise to the party against whom the evidence would be
> offered; (2) the ability of that party to cure the surprise; (3) the extent to
> which allowing the evidence would disrupt the trial; (4) the importance
> of the evidence; and (5) the nondisclosing party's explanation for its
> failure to disclose the evidence

Southern States Rack & Fixture v. Sherwin-Williams, 318 F.3d 592, 597 (4th Cir.

2003), 596

Here, Judge Hilton clearly abused his discretion by denying Plaintiffs' Motion to

file their expert, Mr. Miller's affidavit late.

Plaintiffs timely filed their Rule 26 Expert Designation, which named 9 experts including Mr. Miller, an accident reconstruction expert. JA134-161. Due to a clerical error, Counsel failed to attach the accompanying affidavits. Neither party realized that Plaintiffs had failed to file the affidavit until February 25, 2025, at which point Plaintiffs promptly moved to file only Mr. Miller's affidavit late. JA211-244. Thus, the Defendants (who chose not to depose any of the experts)[18], were fully aware, or should have been fully aware, that Plaintiffs expected to call Mr. Miller's opinion, and would not have been surprised, prejudiced or harmed by the late filing of the affidavit.

The final pretrial hearing was on February 20, 2025, but due to the Court's and Counsel's scheduling conflicts, trial was not scheduled until June 23, 2025. JA210, JA417. The Court acknowledged the length of time between the pretrial and the trial, and noted that counsel could work together to arrange the logistics of additional depositions Counsel believed necessary. JA418. Thus, contrary to Judge Hilton's statement, there was plenty of time left to depose Mr. Miller, or any other expert. Moreover, the affirmation was filed 4 months prior to the scheduled trial,

---

[18] Despite being notified by the ECF filing system of filing of the Expert Designation in , Defense Counsel indicated that they were not aware that the Plaintiffs had filed their Expert Designation until February 25, 2025. Defendants did not designate any experts.

any surprise was cured, and there was an opportunity to take a deposition, if the Defendant wished to do so

The late filing of the affidavit would not have disrupted the trial. The trial was set for 4 days, and was 4 months after the late filing. JA210. Accordingly, there would not have been any disruption to the trial.

Mr. Miller's testimony was an important aspect of the Plaintiffs' case. There was no eyewitness to the collision, but there was a significant amount of circumstantial evidence. An accident reconstructionist, such as Mr. Miller, would have aided the trier-of fact (the jury), in putting all of this circumstantial evidence together to help them reach their ultimate conclusion (Though he was not essential as certainly had the trial occurred in state court Virginia law would not have permitted an expert to testify.)

Finally, the reason for the late filing was not bad faith. It was a clerical error on the part of counsel. The Affirmation was prepared in a timely manner (JA211-213) but counsel made a filing mistake that went unnoticed for months. The parties should not be sanctioned for a clerical error that had no prejudicial effect to the Defendant.

Further, the District Court had also previously allowed the Defendant Kenin to file an Answer 44 days late, and despite the Court's prior issuance of an Entry of Default. JA117, JA127-133, JA162-165. Not to allow the Plaintiffs to have the

same grace of time particularly in light of the fact that there was no prejudice to the Defendants was clearly inequitable, unjust and an abuse of discretion.

### 3. Judge Hilton Should Not Have Disqualified Mr. Miller.

Finally, the Court's conclusion that Mr. Miller was not qualified as an expert based on Judge Hilton's improper conclusion that there was no eyewitness testimony and judicial notice of the speed and stopping times of Gyimah's taxi was a clear abuse of discretion. As described in Argument II, *supra,* there was a substantial amount of circumstantial evidence that could support a jury concluding that Gyimah failed to avoid the collision. Mr. Miller's expert opinion merely ties these facts together and would assist the trier of fact. Further as detailed in Argument II, *supra,* it was an abuse of discretion for Judge Hilton to utilize Va Code § 46.2-880 as presumption to reach his own conclusions of fact and rule that Mr. Miller's opinion was not based on the evidence. Accordingly, trial court abused its discretion, and Judge Hilton's opinion denying the late filing of Mr. Miller's affidavit should be reversed.

### CONCLUSION

Based on the foregoing, this Court should

1. Reverse the Trial Courts dismissal of Fairfax Taxi, Inc.

2. Reverse the Trial Courts grant of Summary Judgment on the question of Gyimah's negligence;

3. Reverse the Trial Courts denial of Plaintiffs' Motion to file attachments to Expert Designation late;

4. Remand this case for a full trial on the merits; and

5. Grant such other relief that is just and proper.

## STATEMENT OF ORAL ARGUMENT

Plaintiffs request Oral Argument on these matters.

> Brian M. O'Connor, Administrator
>     of the Estate of Hyo Jung Kim, and
> Sung-Chul Jung,
> By Counsel

/s/ Deborah E. Mayer
Steven M. Garver, Esquire, VSB#1514
Deborah E. Mayer, Esquire, VSB#51072
GarverLaw, P.L.L.C.
11702 Bowman Green Drive, Suite 100
P.O. Box 2430
Reston, Virginia 20190-2430
(703)471-1090
(703)471-1095 (Facsimile)
steve@garverlaw.com
demayer@garverlaw.com
Counsel for Appellants

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I, on this 14th day of September, 2025, did cause a true copy of the foregoing *Pleading* to be delivered to:

| | |
|---|---|
| John D. McGavin, Esq. | ___ By First Class Mail |
| Gifford Hampshire, Esq | ____ By Federal Express |
| McGavin, Boyce, Bardot, Thorsen & Katz, P.C. | ____ By Hand Delivery |
| 9990 Fairfax Blvd, Suite 400 | _x__ By Electronic Means |
| Fairfax, VA 22030 | ____ By Facsimile |
| 703-385-1000 | |
| 703-385-1555 (fax) | |
| jmcgavin@mbbtklaw.com | |
| ghamphsire@mbbtklaw.com | |

Counsel for Appellees Fairfax Taxi, Inc.,
Evelyn Kenin, Administrator of the Estate
of Amoah Gyimah, Deceased

/s/ Deborah E. Mayer
Deborah E. Mayer